******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CELIA W. WHEELER ET AL. *v.*
BEACHCROFT, LLC, ET AL.
(SC 19355)
(SC 19356)
(SC 19357)

Palmer, Zarella, Eveleigh, McDonald, Espinosa and Robinson, Js.

*Argued September 11, 2015—officially released January 12, 2016*

*Gerald L. Garlick*, with whom were *Daniel J. Klau* and *William H. Clendenen, Jr.*, for the appellants (named defendant et al.).

*Linda Pesce Laske*, with whom, on the brief, was *Joel Z. Green*, for the appellees (named plaintiff et al.).

*Opinion*

ROBINSON, J. These consolidated appeals arise from a nearly century old dispute among neighbors in a housing development along the Long Island Sound (sound) over access to the shore. This dispute has given rise to numerous actions, two of which have reached this court over the past ten years. See *McBurney* v. *Cirillo*, 276 Conn. 782, 889 A.2d 759 (2006) (*McBurney I*), overruled in part by *Batte-Holmgren* v. *Commissioner of Public Health*, 281 Conn. 277, 914 A.2d 996 (2007); *McBurney* v. *Paquin*, 302 Conn. 359, 28 A.3d 272 (2011) (*McBurney II*). The present appeals require us to determine whether certain prior actions bar, via the doctrine of res judicata, two claims in the plaintiffs'[1] consolidated quiet title actions, namely: (1) that they have prescriptive easements over certain property adjacent to the sound; and (2) that the same property constitutes a public way. The defendants[2] appeal from the judgment of the trial court denying in part their motions for summary judgment as to those claims pursuant to the doctrines of res judicata.[3] On appeal, the defendants claim that the trial court improperly denied their motions for summary judgment because: (1) the plaintiffs' claims are sufficiently similar to those asserted in the prior actions, such that they should have been brought in the same action; and (2) the plaintiffs are in privity with the lot owners party to the prior actions, and even if they are not in privity, the notices and opportunities to intervene provided to the plaintiffs in the prior actions served the purpose of the privity requirement and, therefore, privity should not be required for the application of res judicata. We disagree, and affirm the judgment of the trial court.

The record, including our previous opinions, reveals the following facts and procedural history. The plaintiffs and the defendants own lots in a housing development (development) that is located adjacent to the sound on Crescent Bluff Avenue (avenue) in the town of Branford. See *McBurney I*, supra, 276 Conn. 787. The development consists of thirty-five lots in a long and narrow five acre tract of land. The narrow end of the development borders the sound to the south, with the avenue running north to south through the development and perpendicular to the sound. Thirty-one lots line the avenue in the interior of the development. The avenue runs between the four waterfront lots, with two lots on each side. The avenue ends at a small strip of land (lawn) directly abutting the sound, which is the subject of the dispute in the present case. The plaintiffs own interior lots in the development. The defendants own waterfront lots and portions of the lawn. Beachcroft, LLC (Beachcroft), owns the avenue. The plaintiffs allege that, over the years, they and other interior lot owners have crossed the lawn to go down to the sound.

In 2009, the plaintiffs filed a quiet title action pursuant to General Statutes § 47-31, asserting that they and other interior lot owners, as well as members of the public, have acquired various rights to use the avenue and lawn. The complaint alleges that the plaintiffs have acquired an express easement, implied easement, prescriptive easement, covenant appurtenant, and easement by necessity over the lawn, and that the lawn constitutes a public way as an extension of the avenue, which they also claim is a public way. The defendants moved for summary judgment only on the counts pertaining to the lawn, arguing that they are barred by res judicata.

In order to place the defendants' argument and the trial court's decision in full context, we briefly recount the relevant portions of the prior litigation surrounding the lawn. We note at the outset of this discussion that the plaintiffs were not a party to any of these prior actions.

Between 1998 and 2001, James R. McBurney and Erin E. McBurney, who own a waterfront lot and part of the lawn, brought four quiet title actions (McBurney actions) for trespass and adverse possession against several interior lot owners seeking declaratory and injunctive relief.[4] Id., 786. The defendants in the McBurney actions, who owned interior lots, counterclaimed that they had acquired prescriptive easements over the lawn. Id. In 2001, several interior lot owners, including Salvatore Verderame and Antoinette Verderame, filed a separate action (first Verderame action) against several waterfront lot owners seeking declaratory and injunctive relief and damages in connection with the same facts.[5] Id., 795 and n.17. All lot owners in the development were notified of the pendency of the first Verderame action, but not of the McBurney actions. Id., 795. The McBurney actions and the first Verderame action were subsequently consolidated for trial. Id. The court decided to try the nonjury claims in the McBurney actions first and discharged the jury in the first Verderame action. Id. After a bench trial, the trial court, *Arnold, J.*, found against James McBurney and Erin McBurney on their adverse possession claims and most of their trespass claims.[6] Id., 786. With regard to the counterclaims in the McBurney actions, the court held that the interior lot owners had both implied and prescriptive easements over the lawn. Id., 786–87. Both interior and waterfront lot owners appealed. Id., 785.

On appeal, we reversed the trial court's judgment in part, concluding that although the interior lot owners had an implied easement over the lawn, they had not acquired a prescriptive easement because the trial court had improperly aggregated all of the lot owners' collective uses of the lawn to satisfy the fifteen year statutory period. Id., 813–14. We upheld the existence of the implied easement and remanded the case for further proceedings to determine the scope of that easement.

Id., 823. We also ordered that notice of the remand action be provided to all lot owners and that they be given an opportunity to join as parties. Id. It is undisputed that notice of the proceeding on remand was given to all lot owners in March, 2006.[7]

Three months later, several interior lot owners filed another action, *Verderame* v. *Saggese*, Superior Court, judicial district of New Haven, Docket No. CV-06-4027737-S (second Verderame action). That action sought, inter alia, a declaratory judgment that those interior lot owners "enjoy[ed] an easement . . . for all purposes as might reasonably serve [their] convenience," an injunction preventing interference with the implied easement declared in *McBurney I*, damages, and certification of a class action.[8] Notice of the complaint in the second Verderame action was sent to all lot owners.

In March, 2008, in accordance with our *McBurney I* remand order, the trial court, *Shortall, J.*, held an evidentiary hearing to determine the scope of the interior lot owners' implied easement over the lawn. *McBurney II*, supra, 302 Conn. 365. Beachcroft, two waterfront lot owners, and one interior lot owner intervened.[9] Id., 362 n.1 and 363 n.3. The trial court determined that the implied easement included the right to pass and repass over the lawn to access the beach during certain hours, but not the right to socialize and recreate on the lawn. Id., 365.

The trial court in *McBurney II* withheld final judgment and ordered a posttrial hearing to address several questions, including, in relevant part, which lot owners should be bound by the judgment. Id., 366. After that hearing, the trial court held that its orders were binding on all lot owners. *McBurney* v. *Paquin*, Superior Court, judicial district of Hartford, Complex Litigation Docket, Docket No. X09-CV-01-4027736-S (September 17, 2008). Copies of the trial court's decision on the scope of the implied easement and its binding effect were sent to all lot owners. The interior lot owners appealed and the waterfront lot owners cross appealed. *McBurney II*, supra, 302 Conn. 362–63.

On November 26, 2008, while the appeal in *McBurney II* was pending, the trial court, *Shortall, J.*, rendered partial summary judgment in the second Verderame action in favor of the defendants.[10] Approximately one year later, in September, 2009, the plaintiffs filed the action giving rise to the present appeals. Shortly thereafter, the plaintiffs in the first Verderame action withdrew all counts of their complaint except for a single claim under the Connecticut Unfair Trade Practices Act. The defendants in that case moved to strike this claim. The trial court, *Shapiro, J.*, granted the motion to strike and rendered judgment for those defendants in 2010. On April 19, 2011, the plaintiffs in the second Verderame action withdrew the remainder of their

claims. On October 4, 2011, we affirmed nearly all aspects of the trial court's 2008 judgment regarding the scope of the interior lot owners' implied easement over the lawn.[11] *McBurney II*, supra, 302 Conn. 384. On December 14, 2011, the defendants in the present case filed motions for summary judgment on the ground of res judicata.

In seeking summary judgment in the present case, the defendants argued that a number of the plaintiffs' claims are barred by res judicata because the plaintiffs are in privity with the lot owners involved in the prior cases and were given repeated notices and opportunities to intervene in those cases. The trial court, *Bright, J.*, agreed with the defendants with respect to most of the plaintiffs' claims, but not with respect to the prescriptive easement and public way claims. The court reasoned that those claims were not barred because they were beyond the scope of the *McBurney I* remand hearing and the plaintiffs were not in privity with the other lot owners with respect to those claims. The court stated that the plaintiffs' prescriptive easement claims are fact specific and based on their individual uses of the lawn. The court also noted that the avenue was never at issue in the *McBurney I* or *McBurney II* litigation and, thus, the plaintiffs' claim that the lawn constitutes a public way as an extension of the avenue should not be barred. Accordingly, the trial court granted the defendants' motions for summary judgment in part. This appeal followed. See footnote 3 of this opinion.

On appeal, the defendants contend that the trial court improperly held that the plaintiffs' prescriptive easement and public way claims are not barred by res judicata because they constitute the " 'same claim' " as the easement claims raised in the prior actions and, thus, should have been raised in those actions. The defendants also assert that the plaintiffs are in privity with the other lot owners with regards to those claims. Alternatively, the defendants argue that even if the lot owners are not in privity, the purpose of the privity requirement is met by the repeated notices and opportunities to intervene provided to the plaintiffs in the prior actions.

In response, the plaintiffs argue that their prescriptive easement and public way claims are not barred because they are factually and legally distinct from those previously asserted, and the plaintiffs are not in privity with the other lot owners with respect to those claims. Additionally, the plaintiffs contend that the notices informing them of the prior litigation are insufficient to overcome the privity requirement because those notices did not inform them that they had to raise their claims in those actions, rendering it inequitable to bar them now. After examining the facts and weighing the applicable policy concerns, we agree with the plaintiffs that their public way and prescriptive easement claims are

not barred by res judicata.[12]

The applicability of the doctrine of res judicata presents a question of law that we review de novo. *Cumberland Farms, Inc.* v. *Groton*, 262 Conn. 45, 57–58, 808 A.2d 1107 (2002). Res judicata, or claim preclusion, "express[es] no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest." (Internal quotation marks omitted.) *Carol Management Corp.* v. *Board of Tax Review*, 228 Conn. 23, 32, 633 A.2d 1368 (1993). Generally, for res judicata to apply, four elements must be met: (1) the judgment must have been rendered on the merits by a court of competent jurisdiction; (2) the parties to the prior and subsequent actions must be the same or in privity; (3) there must have been an adequate opportunity to litigate the matter fully; and (4) the same underlying claim must be at issue. See, e.g., *Tirozzi* v. *Shelby Ins. Co.*, 50 Conn. App. 680, 686–87, 719 A.2d 62, cert. denied, 247 Conn. 945, 723 A.2d 323 (1998).

Res judicata bars the relitigation of claims actually made in the prior action as well as any claims that might have been made there.[13] *Powell* v. *Infinity Ins. Co.*, 282 Conn. 594, 607–608, 922 A.2d 1073 (2007). Public policy supports the principle that "a party should not be allowed to relitigate a matter which it already has had an opportunity to litigate." (Internal quotation marks omitted.) *Duhaime* v. *American Reserve Life Ins. Co.*, 200 Conn. 360, 363–64, 511 A.2d 333 (1986). Thus, res judicata prevents reassertion of the same claim "regardless of what additional or different evidence or legal theories might be advanced in support of it." *Delahunty* v. *Massachusetts Mutual Life Ins. Co.*, 236 Conn. 582, 589, 647 A.2d 1290 (1996).

We recognize, however, that application of the doctrine can yield harsh results, especially in the context of claims that were not actually litigated and parties that were not actually involved in the prior action. See *Weiss* v. *Weiss*, 297 Conn. 446, 465–66, 998 A.2d 766 (2010). The decision of whether res judicata should bar such claims should be based upon "a consideration of the doctrine's underlying policies, namely, the interests of the defendant and of the courts in bringing litigation to a close . . . and the competing interest of the plaintiff in the vindication of a just claim." (Citation omitted.) *Delahunty* v. *Massachusetts Mutual Life Ins. Co.*, supra, 236 Conn. 591; see also 1 Restatement (Second), Judgments § 24 (1982). The doctrine should be flexible and "must give way when [its] mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies." (Internal quotation marks omitted.) *Isaac* v. *Truck Service, Inc.*, 253 Conn. 416, 423, 752 A.2d 509 (2000).

In the present case, we conclude that policy considerations do not support the application of res judicata

to the plaintiffs' claims for three reasons. First, the character of the lawn as a public way was never raised in the prior actions, and it is not similar enough to the interior lot owners' easement claims to say that they had to be raised in the same action. Second, with respect to the plaintiffs' prescriptive easement claims, the plaintiffs are not in privity with the other lot owners because their rights stem from their own distinct uses of the lawn. Third, the notices and opportunities to intervene provided to the plaintiffs in the prior actions cannot overcome the lack of privity because the notices did not sufficiently inform the plaintiffs that they could— let alone *should* or *must*—bring their prescriptive easement claims or risk them being barred by res judicata.

I

First, the plaintiffs' public way claim is not barred because it does not constitute the same claim as the easement claims made in prior actions, such that the plaintiffs were required to join in those actions and assert the claim therein.[14] Although res judicata bars claims that were not actually litigated in a prior action, the previous and subsequent claims must be considered the same for res judicata to apply. See *Powell* v. *Infinity Ins. Co.*, supra, 282 Conn. 607–608. "[T]he critical question is how broad a definition to give to the term 'same claim' or 'cause of action.' The broader the definition, the broader the scope of preclusion." F. James & G. Hazard, Civil Procedure (2d Ed. 1965) § 11.7, p. 540; see also *State* v. *Ellis*, 197 Conn. 436, 464, 497 A.2d 974 (1985).

To determine whether claims are the "same" for res judicata purposes, this court has adopted the transactional test. *Weiss* v. *Weiss*, supra, 297 Conn. 461. Under the transactional test, res judicata extinguishes "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." (Internal quotation marks omitted.) *Duhaime* v. *American Reserve Life Ins. Co.*, supra, 200 Conn. 364, quoting 1 Restatement (Second), supra, § 24 (1). "What factual grouping constitutes a transaction, and what groupings constitute a series, are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." (Internal quotation marks omitted.) *Orselet* v. *DeMatteo*, 206 Conn. 542, 545–46, 539 A.2d 95 (1988). "[E]ven though a single group of facts may give rise to rights for several different kinds of relief, it is still a single cause of action." (Internal quotation marks omitted.) *Lighthouse Landings, Inc.* v. *Connecticut Light & Power Co.*, 300 Conn. 325, 349, 15 A.3d 601 (2011). "In applying the transactional test, we com-

pare the complaint in the [present] action with the pleadings and the judgment in the earlier action." *Commissioner of Environmental Protection* v. *Connecticut Building Wrecking Co.*, 227 Conn. 175, 190, 629 A.2d 1116 (1993).

In the context of private easement and public way claims, we find instructive one recent case from another state that has adopted the transactional test. In *Gillmor* v. *Family Link, LLC*, 284 P.3d 622, 626–27 (Utah 2012), the Supreme Court of Utah held that a property owner's public way claims[15] were not barred by res judicata, despite the fact that the same property owner had previously asserted private easement claims over the same roads owned by her neighbors. Although her public way claims were "factually available" at the time of the prior action and involved the same roads, the court held that the claims were not barred because they did not originate from the same facts. Id., 630. The court explained that the easement claims arose from the property owner's use of the roads, a property agreement, and the landlocked nature of the property. In contrast, the public way claims arose from the public's use of the roads dating back to the 1800s. Id., 628–29. Because "there [was] no significant overlap in the facts, witnesses, or evidence necessary to establish [the claims]," the public way claims were "legally and factually distinct . . . ." Id., 629. The court concluded that, although the property owner could have brought her public way claims in the prior action, she was not *required* to assert them therein.[16] Id., 626–27. Additionally, the court observed that the motivations underlying the claims were distinct; the motive for the easement claim was "a desire for private, exclusive access to a private road" and, in contrast, the motive for the public way claims was "a public right-of-way that is accessible to all members of the public with no right of exclusion." Id., 629. Therefore, the property owner's neighbors "could not have reasonably expected that they would be immune from all public claims regarding these roads" and, similarly, "could not have reasonably believed that all members of the general public, including the [property owner], would be precluded from making a public claim to these roads."[17] Id.

In the present case, as in *Gillmor*, the distinct nature of the plaintiffs' public way claim, and the evidence required to prove it, leads us to the conclusion that the plaintiffs were not *required* to join in the prior actions in order to assert their claim. To determine whether an implied easement exists, courts consider: (1) the intention of the parties; and (2) whether the easement is "reasonably necessary for the use and normal enjoyment of the dominant estate." (Emphasis omitted; internal quotation marks omitted.) *McBurney I*, supra, 276 Conn. 800. To establish a prescriptive easement claim, a plaintiff must prove an open, visible, continuous, and uninterrupted use of the property for fifteen years under

a claim of right. General Statutes § 47-37. In *McBurney I*, the trial court, in reaching its conclusions as to the interior lot owners' implied easement and prescriptive easement claims reviewed "numerous title investigation records, deed copies, photographs, maps and witness testimony, including the testimony of [a land surveyor and historian]" as well as *Fisk* v. *Ley*, 76 Conn. 295, 56 A. 559 (1903), a 1903 decision by this court interpreting the lot owners' rights to the lawn. *McBurney* v. *Cirillo*, Superior Court, judicial district of New Haven, Docket Nos. CV-98-0414820-S, CV-99-0422102-S, CV-99-0422100-S, CV-01-0455411-S (September 17, 2003). In contrast, to prove that the lawn is a public way as an extension of the avenue in the present case, the plaintiffs must demonstrate that the grantor impliedly dedicated the avenue to the public and that the public has accepted the avenue for that purpose. See *Montanaro* v. *Aspetuck Land Trust, Inc.*, 137 Conn. App. 1, 9, 48 A.3d 107 (2012); see also *DiCioccio* v. *Wethersfield*, 146 Conn. 474, 479, 152 A.2d 308 (1959). The plaintiffs would rely on evidence of the grantor's intent to dedicate the lawn and avenue to the public and the public's use and maintenance of the lawn since the development's inception. See *DiCioccio* v. *Wethersfield*, supra, 479; *Montanaro* v. *Aspetuck Land Trust, Inc.*, supra, 9. Such evidence might well include some evidence offered in the prior actions, such as the lot owners' deeds, photographs, and the testimony of a historian, especially with regard to the grantor's intent.[18] That evidence, however, would necessarily also include documents and testimony from the public about its acceptance and maintenance of the lawn and avenue, as well as the public's use of the lawn since the establishment of the development in the early 1900s.[19] Although there is some overlap in this evidence, there is not a *significant* overlap rendering the public way, implied easement, and prescriptive easement claims the "same" for res judicata purposes and justifying a complete bar of the plaintiffs' claim, especially since the plaintiffs were not a party to the prior actions. See *Weiss* v. *Weiss*, supra, 297 Conn. 463 (dissolution action determining equitable distribution of marital assets barred "more specific" claim that plaintiff was entitled to proceeds from defendant's workers' compensation cases); *Commissioner of Environmental Protection* v. *Connecticut Building Wrecking Co.*, supra, 227 Conn. 189–92 (claim alleging that company committed solid waste violations, water pollution violations, and unreasonable pollution identical to claim alleging that company's officers illegally operated solid waste facility and polluted natural resources); cf. *Bruno* v. *Geller*, 136 Conn. App. 707, 729–30, 46 A.3d 974 (barring plaintiff's third attempt to prove previously rejected fraud claims to "get around" New York judgment; plaintiff could not "simply cite in a new defendant and put new labels on her causes of action"), cert. denied, 306 Conn. 905, 52 A.3d 732 (2012).

Moreover, the plaintiffs' claim that the lawn is a public way as an extension of the avenue necessarily requires a determination that the avenue itself constitutes a public way, and the avenue was never examined in the prior actions. "[T]he scope of [the] matters precluded necessarily depends on what has occurred in the former adjudication." *State* v. *Ellis*, supra, 197 Conn. 467; see also *Twenty-Four Merrill Street Condominium Assn., Inc.* v. *Murray*, 96 Conn. App. 616, 620, 902 A.2d 24 (2006) (condominium association not required to assert statutory lien claims pertaining to tenant's failure to pay common charges and failure to pay fines and repair charges in same action; failure to pay fines and repair charges due to faulty plumbing "was not a subject of the prior action"). As the trial court observed, "[a]ll of the litigation [since 1903] . . . has focused primarily on disputes over property rights to the lawn." (Citation omitted.) Although we noted in *McBurney I* that "the most reasonable way to view the two, the avenue and the lawn, is as part and parcel of one common area," that observation was in reference to our holding that the lawn and avenue were both intended for shared use among the lot owners, such that the implied easement extended to the avenue for access to the highway. *McBurney I*, supra, 276 Conn. 805. We did not suggest that the previous litigation concerning the lawn fully encompassed the lot owners' rights with regards to the avenue. The avenue was neither part of our remand order in *McBurney I* nor part of the trial court's subsequent determination on the scope of the implied easement over the lawn. See id., 823–24. Most significantly, the lot owners' rights to use the lawn *or* avenue *as members of the public* were never raised in the prior actions. Accordingly, we conclude that the plaintiffs' public way claim is not barred by res judicata.

## II

We next consider whether the plaintiffs' prescriptive easement claims are barred by res judicata. Although some prescriptive easement claims *were* raised in the prior actions, we conclude that these plaintiffs' individual claims are not barred because the plaintiffs are not in privity with the other lot owners with respect to those claims.[20] The lot owners involved in the prior actions could not know the details of, and adequately litigate, the plaintiffs' claims, which depend on their individual uses of the lawn over a fifteen year period under § 47-37. Thus, the lot owners do not share the same prescriptive rights, and we cannot say that the plaintiffs' rights were adequately protected by the parties in the prior actions such that privity may be found. Moreover, we disagree with the defendants' contention that privity is not required because the notices and opportunities to intervene in the prior actions sufficiently informed the plaintiffs that they had to raise their claims in those prior actions or risk subsequent

preclusion.

### A

When res judicata is asserted against a nonparty to a prior action, privity must be established to ensure that the nonparty's rights were sufficiently protected in the action. The privity requirement exists "to ensure that the interests of the party against whom [res judicata] is being asserted have been adequately represented . . . ." (Internal quotation marks omitted.) *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 304, 596 A.2d 414 (1991). "In determining whether privity exists, we employ an analysis that focuses on the functional relationships of the parties. Privity is not established by the mere fact that persons may be interested in the same question or in proving or disproving the same set of facts. Rather, it is, in essence, a shorthand statement for the principle that [res judicata] should be applied only when there exists such an identification in interest of one person with another as to represent the same legal rights so as to justify preclusion." *Mazziotti* v. *Allstate Ins. Co.*, 240 Conn. 799, 814, 695 A.2d 1010 (1997). "[T]he crowning consideration . . . [is] that the interest of the party to be precluded must have been sufficiently represented in the prior action so that the application of [res judicata] is not inequitable." (Internal quotation marks omitted.) Id., 818. Thus, "[a] key consideration . . . is the sharing of the same legal right . . . ." (Internal quotation marks omitted.) *Aetna Casualty & Surety Co.* v. *Jones*, supra, 304.

Because parties may share some legal rights and not others, parties may be in privity with respect to some claims, but not others, for res judicata purposes. See *Martinez* v. *Texaco Trading & Transportation, Inc.*, 353 F.3d 758, 763 (9th Cir. 2003) (although plaintiff's "public" claims were barred, plaintiff was not in privity with party to prior action "with regards to the easement claim"); *JPMorgan Chase Bank, N.A.* v. *KB Home*, 740 F. Supp. 2d 1192, 1206 (D. Nev. 2010) ("privity may exist for some claims or issues and not others"); *Smigelski* v. *Kosiorek*, 138 Conn. App. 728, 736, 54 A.3d 584 (2012) (noting that "privity exists between the parties *as to the claims and issues being raised*" such that res judicata barred action [emphasis added; internal quotation marks omitted]), cert. denied, 308 Conn. 901, 60 A.3d 287 (2013). As the Supreme Court of South Carolina has observed, " '[p]rivity' as used in the context of res judicata or collateral estoppel, does not embrace relationships between persons or entities, but rather it deals with a person's relationship to the subject matter of the litigation." *Richburg* v. *Baughman*, 290 S.C. 431, 434, 351 S.E.2d 164 (1986). The trial court in the present case held as much, concluding that the plaintiffs are in privity with the other lot owners with regards to their implied easement, express easement, and covenant

appurtenant claims but not their prescriptive easement and public way claims. Thus, a conclusion that the plaintiffs are in privity with regards to their implied easement, express easement, and covenant appurtenant claims, but not their prescriptive easement claims, could be logically sound if supported by the record.[21]

Accordingly, we conclude that the plaintiffs are not in privity with the other lot owners with regard to their prescriptive easement claims, even if they are with regards to their other claims, because each lot owner's claim is factually distinct and based on their individual uses of the lawn. Because some lot owners may be able to satisfy the elements of a prescriptive easement claim and others may not, depending on each lot owner's use of the lawn over a fifteen year period, all of the lot owners in the subdivision cannot be said to share the same prescriptive rights. Although the lot owners in the previous cases could litigate their *own* prescriptive easement claims, they could not be expected to know the details of and adequately litigate the plaintiffs' claims, such that the application of res judicata to them would not be unfair.[22] As one court noted, "[e]ven if [the parties] share interests in some respect, if they are not in privity in *all respects* necessary to satisfy the court of the fairness of applying the estoppel doctrine, the court will not give res judicata effect . . . ." (Emphasis added.) *Kreisberg* v. *Scheyer*, 11 Misc. 3d 818, 823, 808 N.Y.S.2d 889 (2006); see also id., 819–24 (property owners' variance claim not barred by previous denial of previous owners' variance claim; owners not in privity because facts not identical and subsequent claim presented significant changes in plans and new evidence); *Cianciola* v. *Johnson's Island Property Owners' Assn.*, 981 N.E.2d 311, 315 (Ohio App. 2012) (lot owners in subdivision not in privity with other lot owners involved in prior cases against homeowner's association; lots had different characteristics and chains of title and lot owners had no relationship with one another other than owning property in same subdivision); cf. *Tahoe-Sierra Preservation Council, Inc.* v. *Tahoe Regional Planning Agency*, 322 F.3d 1064, 1082–83 (9th Cir. 2003) (property owners' membership in and close relationship with property owners' association rendered them in privity, given that individual owners "clearly hitched their fortunes" to association's leadership and alleged similar wrongs arising from same set of facts).

Our holding in *McBurney I* that the lot owners are not in privity for "tacking" purposes in establishing their prescriptive easement claims supports this conclusion. *McBurney I*, supra, 276 Conn. 813–14; accord *Kornbluth* v. *Kalur*, 577 A.2d 1194, 1195–96 (Me. 1990) (property owners cannot combine uses of land to establish prescriptive easement claims). Because we have already held that the lot owners do not have a sufficiently close relationship to be in privity for tacking purposes, it

easily follows that they are not in privity for res judicata purposes, especially when the latter conclusion would bar the plaintiffs' claims altogether.

The defendants ask us to draw a distinction between privity in the context of tacking and res judicata, arguing that, because privity of estate is required for the former and not the latter, privity for res judicata purposes may still be found. It is true that strict privity of estate, or "mutual or successive relationships to the same rights of property," is not required for res judicata. *Mazziotti* v. *Allstate Ins. Co.*, supra, 240 Conn. 813 n.12. Rather, we have recognized that "[t]here is no prevailing definition of privity to be followed automatically in every case. . . . It is not a matter of form or rigid labels; rather it is a matter of substance." Id., 813–14. At the very least, however, privity "signifies a relationship between one who is a party of record and another who is a nonparty, but is sufficiently close to mandate the application of res judicata . . . ." Id., 813 n.12.

We do not agree with the defendants that this case presents the requisite closeness. The lot owners not only do not share "mutual or successive" prescriptive easement rights, but they do not share the same rights at all because their rights depend on their differing uses of the lawn. Furthermore, when the result is not that the plaintiffs have failed to establish a prescriptive easement claim, but that they are barred from raising the claim at all, the privity showing must be particularly strong. We conclude that the defendants have not met their burden in this case.

B

The defendants alternatively contend that the repeated notices and opportunities to intervene provided to the plaintiffs in the prior actions satisfy the concerns of the privity requirement and, thus, privity should not be required for the application of res judicata. The defendants cite no authority in support of this argument. The defendants suggest that because the plaintiffs declined the opportunity to protect their interests in the prior actions, the purpose of the privity requirement—to ensure that a party's interests were adequately protected in the previous action—is inapplicable. Even if we were to agree with the defendants' view of the law, we disagree that the notices provided to the plaintiffs adequately informed them of the preclusive effect of their failure to join and assert their claims in the prior actions, and ultimately cannot bar their claims.

Generally, notice alone has been insufficient to bind nonparties to a prior action and compel the harsh results of res judicata.[23] See, e.g., *Richards* v. *Jefferson County*, 517 U.S. 793, 800–801, 116 S. Ct. 1761, 135 L. Ed. 2d 76 (1996) (noting that, while adequate representation might cure lack of notice, prior action would at least

have to be "so devised and applied as to [e]nsure that those present are of the same class as those absent and that the litigation is so conducted as to [e]nsure the full and fair consideration of the common issue"); *Headwaters, Inc.* v. *United States Forest Service*, 399 F.3d 1047, 1055 n.7 (9th Cir. 2005) ("[w]e do not suggest that notice alone would be sufficient to demonstrate adequate representation"). Courts more commonly hold that notice of and an opportunity to intervene in the prior action *support* their privity findings, but do not replace the requirement that the parties share the same legal rights. See, e.g., *Regions Bank* v. *J.R. Oil Co.*, *LLC*, 387 F.3d 721, 731 (8th Cir. 2004) (claims not barred "even though [the subsequent party] clearly had notice of the [prior litigation], and failed to intervene, because a party is not . . . required to intervene voluntarily in a separate pending suit merely because it is permissible to do so" [internal quotation marks omitted]); *Loveridge* v. *Fred Meyer, Inc.*, 72 Wn. App. 720, 731, 864 P.2d 417 (1993) ("we do not agree that the privity inquiry turns on notice . . . instead, our focus is on the relationship between the [party to the prior action] and the nonparty"), aff'd, 125 Wn. 2d 759, 887 P.2d 898 (1995); see also *Windsor Locks Associates* v. *Planning & Zoning Commission*, 90 Conn. App. 242, 253, 876 A.2d 614 (2005) (addressing argument that property owner had notice of and opportunity to intervene in prior proceeding and noting that "an unexercised right to participate does not result in preclusion"); *Young* v. *Metropolitan Property & Casualty Ins. Co.*, 60 Conn. App. 107, 115, 758 A.2d 452 (insurer's declination to participate in prior proceedings did not overcome finding that "there can be no privity because the same legal rights are not involved"), cert. denied, 255 Conn. 906, 762 A.2d 912 (2000).

Regardless, even if we were to assume without deciding that notice may serve as a substitute for privity, the notices provided to the plaintiffs did not sufficiently inform the plaintiffs that they *should*, let alone *must*, raise their claims or risk them being barred by res judicata. The defendants point to: (1) notice of the first Verderame action; (2) the 2006 notice of the *McBurney I* remand hearing to determine the scope of the implied easement; (3) notice of the second Verderame action; and (4) notice of the trial court's decision in 2008 regarding the scope of the implied easement and its binding effect on all lot owners. We address each notice in turn.

First, the complaint in the first Verderame action, which was mailed and delivered to the lot owners in 2001,[24] made no reference to any opportunity or obligation on the part of the lot owners to join and assert their claims.[25] There is no language in that complaint suggesting that the plaintiffs must raise their *own* claims. Additionally, four of the six plaintiffs had not yet acquired their interests in their lots and may not have received this notice.[26]

Second, the notice given to all lot owners pursuant to our *McBurney I* remand order did not indicate that the plaintiffs could bring additional and different claims to the court's attention at the remand hearing on the implied easement. Instead, that notice, sent in March, 2006, reiterates our order that the case be remanded "for further proceedings *to determine the scope of the implied easement* . . . ." (Emphasis added.) *McBurney I*, supra, 276 Conn. 823. This sentence specifically defines the purpose of the remand hearing to determining the extent of the implied easement already established by the interior lot owners.[27] Although the notice included a copy of our *McBurney I* decision, it is not at all clear from our decision that the plaintiffs could try to establish their *own* prescriptive easement claims at the remand hearing.[28]

Third, the notice given in the second Verderame action specifically referenced the implied easement declared in *McBurney I* and, again, did not suggest that the plaintiffs join and assert their claims. Only a copy of the complaint was sent to the plaintiffs, which essentially asks the court to ensure that the defendants did not interfere with the implied easement declared in *McBurney I* while the trial court's determination on the scope of that easement was pending.

Lastly, the mailing of copies of the trial court's 2008 decision regarding the scope of the implied easement cannot serve as the basis for barring the plaintiffs' claims, given the absence of the other elements of res judicata. We cannot say that the burden was on the plaintiffs to appeal from these decisions, or that the decisions should have prompted the plaintiffs to raise their prescriptive easement and public way claims sooner. Moreover, although the defendants continuously blame the plaintiffs for failing to intervene in the prior actions, we note that in none of those actions did the defendants serve the plaintiffs with process and summon them to appear pursuant to § 47-31.

The trial court's holding that its decision on the scope of the implied easement is binding on all lot owners because they were provided notice and an opportunity to intervene does not undermine this result. The court's notion holds true *with respect to the scope of the implied easement*, but not necessarily any other claims that the plaintiffs had. The trial court aptly indicated as such by stating that it was not "unfair for the court to bind them *to its determination of the scope of the easement* . . . ." (Emphasis added.)

We acknowledge that the competing concerns of judicial efficiency and repose for the defendants weigh heavily in this case. At first glance, the procedural history of the case seems to favor the application of res judicata. It is evident from a closer examination of the case, however, that barring the plaintiffs' public way

and prescriptive easement claims would not actually save considerable judicial resources. Judicial resources have already been conserved by the proper application of res judicata to the plaintiffs' express easement, implied easement, and covenant appurtenant claims. Furthermore, the plaintiffs' remaining claims with respect to the avenue will move forward regardless of our decision in this appeal. See footnote 19 of this opinion. Thus, our efficiency concerns do not outweigh the unfairness of barring the plaintiffs' distinct claims.

As tempting as it is to put an end to at least part of this litigation, we cannot condone a result that would be "manifestly unfair . . . ." *Weiss* v. *Weiss*, supra, 297 Conn. 473 (*Palmer*, *J.*, dissenting); see also *Gladysz* v. *Planning & Zoning Commission*, 256 Conn. 249, 261, 773 A.2d 300 (2001) (courts must "be careful that the effect of the doctrine does not work an injustice"). Our analysis of res judicata claims must be informed by the "deep-rooted fundamental doctrine of the law that a party to be affected by a personal judgment must have a day in court and an opportunity to be heard on the matter." 47 Am. Jur. 2d 42, Judgments § 641 (1995); see also *Windsor Locks Associates* v. *Planning & Zoning Commission*, supra, 90 Conn. App. 254. We must be fully comfortable with depriving the plaintiffs of their day in court on these claims, and for the reasons discussed in this opinion, we cannot say as such in this case.

The judgment is affirmed.

In this opinion the other justices concurred.

[1] The original plaintiffs in the present case are: Lori P. Callahan, Charles L. Dimmler III, Dean Leone, Tina Mannarino, Angela Rossetti, Harold D. Sessa, Sheryl Lee Sessa, and Celia W. Wheeler. The following parties subsequently intervened as plaintiffs: James Baldwin, Joann Baldwin, Leslie Carothers, Frank Cirillo, Susan Cirillo, Ann Harrison, Peter Paquin, Suzanne Paquin, and Antoinette Verderame. We note that, while the present appeals were pending, Callahan withdrew her claims. For the sake of simplicity, we refer to all of the plaintiffs individually by name. Because the claims raised by the intervening plaintiffs are not at issue in the present appeals, references to the plaintiffs hereinafter collectively include Dimmler, Leone, Mannarino, Rossetti, Harold D. Sessa, Sheryl Lee Sessa, and Wheeler.

[2] The defendant in SC 19355 is Beachcroft, LLC. The defendants in SC 19356 are Erin E. McBurney and James R. McBurney. The defendants in SC 19357 are Kay A. Haedicke and Roger A. Lowlicht. Although the town of Branford and the Pine Orchard Association, Inc., were also named as defendants in the underlying action, they are not parties to the present appeals. For the sake of simplicity, we refer to all of the defendants individually by name. References to the defendants in this opinion collectively include Beachcroft, LLC, Erin McBurney, James McBurney, Haedicke, and Lowlicht.

[3] We transferred the appeal in SC 19356 to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. We transferred the appeals in SC 19355 and SC 19357 to this court pursuant to § 51-199 (c) and Practice Book § 65-2. A denial of a motion for summary judgment constitutes a final judgment for the purposes of appeal if the motion was based on a claim of res judicata. See, e.g., *Santorso* v. *Bristol Hospital*, 308 Conn. 338, 344, 63 A.3d 940 (2013).

[4] "The[se] four . . . actions . . . were *McBurney* v. *Cirillo*, Superior Court, judicial district of New Haven, Docket No. CV980414820; *McBurney* v. *Verderame*, Superior Court, judicial district of New Haven, Docket No. CV990422102; *McBurney* v. *Baldwin*, Superior Court, judicial district of New Haven, Docket No. CV990422100; and *McBurney* v. *Paquin*, Superior Court, judicial district of New Haven, Docket No. CV010455411." *McBurney I*,

supra, 276 Conn. 786 n.3.

[5] In *McBurney I*, supra, 276 Conn. 795, we noted that this "companion case . . . *Verderame* v. *McBurney*, Superior Court, judicial district of New Haven, Docket No. CV010453999 [involved] many of the same parties [in the McBurney actions]." See also id., 795 n.17.

[6] The trial court found in favor of James McBurney and Erin McBurney on the trespass counts only with respect to the defendants Frank Cirillo, Susan Cirillo, James Baldwin, and Joann Baldwin. *McBurney I*, supra, 276 Conn. 786.

[7] The first Verderame action was not part of the appeal and remained pending. See *McBurney I*, supra, 276 Conn. 786 n.4.

[8] The plaintiffs in that case were Salvatore Verderame, Antoinette Verderame, Wayne Cooper, Julia Cooper, and Leslie Carothers. The defendants were Barbara Saggese and Beachcroft.

[9] The sole interior lot owner to intervene in *McBurney I* on remand was Leslie Carothers. *McBurney II*, supra, 302 Conn. 362 n.1. The waterfront lot owners who intervened in those actions were Kay A. Haedicke and Roger A. Lowlicht. Id., 363 n.3.

[10] The court granted summary judgment on the issue of Beachcroft's ownership of the avenue and lawn, holding that it been conclusively established.

[11] We did not affirm the portion of the trial court's judgment permitting access to areas other than the shoreline. *McBurney II*, supra, 302 Conn. 383–84.

[12] The defendants alternatively contend that even if the plaintiffs' public way and prescriptive easement claims are not barred by res judicata, they fail as a matter of law based on principles of stare decisis. See, e.g., *Batte-Holmgren* v. *Commissioner of Public Health*, supra, 281 Conn. 291. The character of the lawn as a public way and the lot owners' rights to use the lawn as members of the public, however, were never raised in the prior actions. Additionally, our conclusion in *McBurney I* that the lot owners have an implied easement over the lawn, and the trial court's determination that the easement does not include the right to socialize and recreate on the lawn, do not cause the lot owners' prescriptive easement claims to fail on the merits because of the absence of an adverse use. See General Statutes § 47-37. The plaintiffs' socialization and recreation on the lawn may still constitute an adverse use of the lawn, and the plaintiffs could conceivably obtain the right to socialize and recreate on the lawn by prescription. The plaintiffs' prescriptive rights depend on their uses of the lawn over a fifteen year period. See General Statutes § 47-37. In contrast, the plaintiffs' implied rights depend on which uses of the lawn are considered "reasonably necessary for the use and normal enjoyment of the [lots]" and the grantor's intent. (Emphasis omitted; internal quotation marks omitted.) *McBurney I*, supra, 276 Conn. 800. Thus, the plaintiffs could acquire the right to socialize and recreate on the lawn if they have adversely used the lawn in this way for fifteen years, even if such use is not "reasonably necessary" for the enjoyment of the lots and contrary to the grantor's intent. Accordingly, our previous decisions with respect to the plaintiffs' implied easement have no bearing on the plaintiffs' prescriptive easement claims.

[13] Res judicata, rather than collateral estoppel, governs the present case because the issues underlying the plaintiffs' claims, namely, whether the plaintiffs have acquired prescriptive easements through their uses of the lawn and whether the lawn has been dedicated to and accepted for public use, were not previously litigated. The "closely related" doctrine of collateral estoppel only bars issues that were actually litigated. *Cumberland Farms, Inc.* v. *Groton*, supra, 262 Conn. 57–58; see also *Powell* v. *Infinity Ins. Co.*, 282 Conn. 594, 600–601, 922 A.2d 1073 (2007) ("[Collateral estoppel] prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties or those in privity with them upon a different claim. . . . An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined." [Citations omitted; internal quotation marks omitted.]). Even if the issues underlying the plaintiffs' claims are similar to those examined in the prior actions, "[i]n order for collateral estoppel to apply . . . there must be an identity of issues, that is, the prior litigation must have resolved the same legal or factual issue that is present in the second litigation." *Upjohn Co.* v. *Planning & Zoning Commission*, 244 Conn. 82, 93–94, 616 A.2d 786 (1992), citing *P. X. Restaurant, Inc.* v. *Windsor*, 189 Conn. 153, 161, 454 A.2d 1258 (1983); see also *Trinity United Methodist Church of Springfield, Massachusetts* v. *Levesque*, 88 Conn. App. 661, 671, 870 A.2d 1116 (collateral estoppel unavailable in action because "the issues

litigated in [the] action are not identical to those actually litigated in the prior action"), cert. denied, 274 Conn. 907, 908, 876 A.2d 1200 (2005). The parties primarily briefed the res judicata issue, and we decide this appeal accordingly.

[14] We note that the plaintiffs did not raise the declaratory judgment exception to the doctrine of res judicata, which provides that "a declaratory judgment action does not have a claim preclusive effect beyond what actually was decided in that action." *Lighthouse Landings*, *Inc.* v. *Connecticut Light & Power Co.*, 300 Conn. 325, 347, 15 A.3d 601 (2011).

[15] Specifically, the plaintiff in *Gillmor* alleged that certain property was "subject to condemnation for a public access easement" and "had been continuously used as public thoroughfares for a period of ten years, and were thus dedicated to public use as a 'highway by use' . . . ." *Gillmor* v. *Family Link*, *LLC*, supra, 284 P.3d 625.

[16] Additionally, the court observed that the motivations underlying the claims were distinct; the motive for the easement claim was "a desire for private, exclusive access to a private road" and, in contrast, the motive for the public way claims was "a public right-of-way that is accessible to all members of the public with no right of exclusion." *Gillmor* v. *Family Link*, *LLC*, supra, 284 P.3d 629.

[17] But cf. *Hatton* v. *Grigar*, 258 Fed. Appx. 706, 707 (5th Cir. 2007) (prior public way and private easement claims barred subsequent trespass action to try title to strip because "[a]t their core," both suits involved same issue of whether road was public or private); *Currier* v. *Cyr*, 570 A.2d 1205, 1209 (Me. 1990) (predecessors' claims to public way and private easement in prior action, and subsequent dispute over rights to disputed strip of land, both relied upon facts "that are sufficiently related in time, space [and] origin that their treatment as a unit conforms to the parties' expectations," thus barring subsequent claim [internal quotation marks omitted]); *Carlson* v. *Clark*, 185 Vt. 324, 328–29, 970 A.2d 1269 (2009) (property owner's easement by necessity claim barred by prior action determining that property owner had acquired prescriptive easement over shoreline; in prior action, property owner alleged easement by necessity claim in complaint and trial court referenced easement by necessity claim in judgment).

[18] Although both the implied easement and public way claims require consideration of the grantor's intent—in either giving an implied easement to the lot owners or dedicating the lawn to public use—the different intents render the claims factually and legally dissimilar enough to preclude their presentation to a jury in a logically succinct way. See *Orselet* v. *DeMatteo*, supra, 206 Conn. 545–46. In separating the McBurney actions from the first Verderame action in 2002, the trial court noted that "the posture of the case made it nearly impossible to submit the issues in an orderly fashion to a jury." *McBurney* v. *Cirillo*, supra, Superior Court, Docket Nos. CV-98-0414820-S, CV-99-0422102-S, CV-99-0422100-S, CV-01-0455411-S. Those cases involved trespass, adverse possession, and easement claims between neighbors, and not any public way claims. Id.

[19] We note that the trial went forward on count one of the plaintiffs' complaint in the present case, which alleges that the *avenue* is a public way. At the trial, the court heard testimony from: (1) several interior lot owners regarding the public's use of the avenue; (2) employees from the town of Branford, including a town engineer, assessor, former director of public works, and the first selectman who worked as a private contractor for the Pine Orchard Association, Inc.; (3) a town historian; (4) an employee of the South Central Regional Water Authority; and (5) a member of the Pine Orchard Association, Inc. The court also reviewed the deeds conveying lots in the development, the development plan, and historical documents showing how the avenue has been used and maintained over the years and by whom. The trial court ultimately concluded that the avenue is not a public way. The plaintiffs' claim that the *avenue* is a public way is contained in a separate count and, therefore, distinct from their claim that the *lawn* is a public way as an extension of the avenue.

[20] We could also hold that the plaintiffs' prescriptive easement claims are not barred because they do not constitute the "same claims" as those of the other lot owners. The plaintiffs, in proving their claims, would offer evidence of their specific uses of the lawn over a fifteen year period, which would involve facts distinct from those underlying the other lot owners' claims. The plaintiffs simply *could not* rely on evidence of the other lot owners' uses, as we stated expressly in *McBurney I*. *McBurney I*, supra, 276 Conn. 813–14. Although we elect to address the parties' privity argument and hold that the plaintiffs' prescriptive easement claims are not barred

on that basis, our inquiry is essentially the same; whether the plaintiffs' prescriptive rights were adequately protected in the prior actions. Additionally, in this context, the elements are linked, insofar as the distinct nature of each lot owner's prescriptive easement claim necessarily *means* that they do not share the same rights and, hence, are not in privity. See *Smigelski* v. *Kosiorek*, 138 Conn. App. 728, 735–36, 54 A.3d 584 (2012) ("The claims being raised in this action are essentially the same claims that were raised and adjudicated in the prior action. Furthermore, privity exists between the parties as to the claims and issues being raised so that the doctrine of res judicata bars this action." [Internal quotation marks omitted.]), cert. denied, 308 Conn. 901, 60 A.3d 287 (2013).

[21] The defendants cite no authority to support their contentions otherwise.

[22] Cf. *Henderson* v. *Scott*, 418 So. 2d 840, 842 (Ala. 1982) (property owner barred from relitigating easement claim established in prior action brought by predecessor in interest); *McClaran* v. *Traw*, 382 S.W.3d 705, 710 (Ark. App. 2011) (property owners barred from reasserting prescriptive easement claims after action establishing extent of prescriptive easements held by same property owners and public; two property owners were party to original action and one was successor in interest).

[23] A notable exception is in the context of uninsured motorist litigation. See, e.g., *Lenzi* v. *Redland Ins. Co.*, 140 Wn. 2d 267, 269, 996 P.2d 603 (2000) (insurer bound by prior judgment "where it had timely notice . . . and ample opportunity to intervene in the lawsuit to protect its interests, but declined to do so"); see also *Zirger* v. *General Accident Ins. Co.*, 144 N.J. 327, 342, 676 A.2d 1065 (1996) ("[w]e recognize that our holding on this point subverts the requirement of privity normally present with an application of the doctrines of res judicata" [internal quotation marks omitted]); *Allstate Ins. Co.* v. *Pietrosh*, 85 Nev. 310, 316–17, 454 P.2d 106 (1969) (same). Other courts have appeared to condone notice as a substitute for privity in the context of suretyships. See, e.g., *Swayne* v. *Capitol Indemnity Corp.*, Docket No. C2-09-CV-0341, 2010 WL 2663209, *3 (S.D. Ohio July 1, 2010) ("[The surety] made no effort to involve itself in the [prior] suit, despite notice . . . . Therefore, privity does apply in this case and [the surety] is bound by res judicata.").

[24] The complaint states that that "[a]ll lot owners . . . have been given notice of the pendency of this case by delivery of a copy of this complaint, with exhibits, and orders, on each of them by first class mail . . . and by abode service at their respective addresses . . . ." It is unclear from the record which exhibits, orders, or other information were provided to the plaintiffs along with the complaint. Because the action sought a declaratory judgment, the notice was presumably provided to comply with Practice Book § 17-56 (b), which mandates in relevant part that "[a]ll persons who have an interest in the subject matter of the requested declaratory judgment . . . be made parties to the action or . . . be given reasonable notice thereof. . . ."

[25] The complaint simply alleges that the lot owners have "a private right or easement appurtenant" for "all purposes as might reasonably serve the convenience of the lot owners . . . ." The interior lot owners eventually asserted by counterclaim that they had acquired prescriptive easements, but these counterclaims are not evident on the face of the complaint.

[26] Celia W. Wheeler, Harold D. Sessa, and Sheryl Lee Sessa acquired their interests in 1966 and 2000, respectively. These plaintiffs presumably received the notice sent in 2001. Dean Leone and Tina Mannarino, however, did not acquire their interests until 2002, and Charles L. Dimmler III and Angela Rossetti did not acquire their interests until 2004. We cannot assume that these plaintiffs' predecessors in interest passed on notice of the pending case and impute such notice to them.

[27] Even if the plaintiffs technically could have brought their claims at the remand hearing; see *Higgins* v. *Karp*, 243 Conn. 495, 502–503, 706 A.2d 1 (1998) (remand hearing not limited to record and evidence presented at original hearing); we cannot impute such legal knowledge to the plaintiffs without more information.

[28] It is arguable that one sentence in the notice—"[i]n the event there are no intervenors, the court will proceed in accordance with the Supreme Court's remand orders"—gives some indication that the lot owners could bring their own distinct claims, and if no one did, the court would simply determine the scope of the implied easement as directed. Without any other information about the case, however, we cannot impute this understanding to the lot owners, especially when doing so would preclude their day in court.